WILLISTON COOPERATIVE CREDIT UNION, Plaintiff and Appellant,

v.

Verlin FOSSUM, a/k/a Verlin L. Fossum; Richard A. Jensen; Loye A. Ashton, a/k/a L.A. Ashton; Defendants and Appellees,

and

Clifford E. Roth, Sr.; C. Eugene Roth, Jr.; Roth Realty; Oilfield Safety, Incorporated; First National Bank & Trust Company of Williston; American State Bank & Trust Company; State of North Dakota, acting through Workmen's Compensation, through Job Service of North Dakota, and through the State Tax Commissioner and the Department of Revenue; Midwest Federal Savings Bank; Metropolitan Federal Savings Bank; United Accounts, Incorporated; United States of America, acting through the Department of the Treasury; William Snyder & Sons, Incorporated; and Manger Insurance, Incorporated, Defendants.

Civ. No. 890349.

Supreme Court of North Dakota.

Aug. 9, 1990.

---

David W. Nelson (argued), Williston, for plaintiff and appellant.

Anseth & Zander, Williston, for defendants and appellees; argued by Janet Holter Zander.

Suess Law Firm, P.C., Williston, for defendants. No appearance.

LEVINE, Justice.

Williston Cooperative Credit Union appeals from a judgment declaring that its May 4, 1983, judgment against William H. Seay is not a lien against lot 5 and the north 40 feet of lot 4 in the Williston Basin Mineral Technology Subdivision (the property). We affirm.

Many of the facts relevant to this case are set forth in an earlier appeal, *Williston Cooperative Credit Union v. Fossum*, 427 N.W.2d 804 (N.D.1988) (*Williston I*), and will not be repeated in this opinion. In *Williston I*, we remanded this case for a trial on the merits and set forth the applicable principles to resolve the issue in dispute:

"[A] judgment lien is valid as against an unrecorded conveyance of which the judgment creditor had no notice at the time the judgment was obtained.

\* \* \* \* \* \*

"One with actual knowledge of facts which would put a prudent person upon inquiry as to the claims of others in the property is deemed to have constructive notice of only those facts which an in-

quiry would have revealed.... Thus, actual notice of occupation by the Roths would give Williston Cooperative constructive notice only of those facts which its properly pursued inquiry in all probability would have disclosed.

\* \* \* \* \* \*

"The question becomes whether the record contains any evidence permitting a reasonable inference (1) that Williston Cooperative had actual knowledge that Gene Roth and Oilfield Safety were in occupation of the property on or before May 4, 1983, the date of the judgment, and (2) that inquiry by Williston Cooperative on or before May 4, 1983, would have revealed a prior, written instrument evidencing an interest in or affecting title to the property." 427 N.W.2d at 807–808.

On remand, the Roths did not produce a written instrument as evidence of their interest in the property on or before May 4, 1983, and the trial court made no finding that there was such an instrument.[1] Loye Ashton, however, testified that he and his co-owners had sold the property to the Roths. Ashton also testified that before May 4, 1983, the Roths had paid most of the purchase price for the property and had constructed a building on the property in which they were operating a business. The trial court found that prior to May 4, 1983, Williston Cooperative knew that the Roths were occupying the property and also found that "the Credit Union as a prudent person should have known on inquiry of the claims of other people on the property." The court ruled that Williston Coopera-

tive's May 4, 1983, judgment was not a lien on the property.

Williston Cooperative asserts that, because the Roths did not show, by written instrument, that they had an interest in the property prior to May 4, 1983, the trial court erred in declaring that Williston Cooperative has no lien against the property. In making this assertion, Williston Cooperative relies upon Sections 47–19–41 [2] and 47–19–42,[3] N.D.C.C. Those sections provide that an unrecorded written instrument conveying real estate is void as against any lawfully obtained judgment against the record title owner. However, they do not speak to the nature of the interest, written or oral, legal or equitable, that a judgment creditor takes subject to when the interest is held by a person in open and notorious possession of the property. We address that issue now.

Thompson's treatise on real property law generally instructs that a possessor's legal or equitable property interests take priority over the interests of a subsequent purchaser or judgment creditor with notice:

"One who purchases with notice that his vendor has agreed to sell to another takes subject to such agreement, although he has no actual notice that the agreement is in writing. He has notice enough to put him upon inquiry; and it is his own fault if he fails to inform himself as to the validity and legal force of the agreement." 8 Thompson on Real Property, § 4326, p. 453.

"Actual possession is notice to all the world of the right or title of the person occupying the premises. It is construc-

---

1. Loye A. Ashton was one of the co-owners and grantors of the property to the Roths in November 1983. Ashton testified that, "it is my belief" that a contract for deed was executed evidencing the Roths' purchase of the property and later testified that "I can't believe" that Mr. Roth would have paid money to purchase the property without a document or that First National Bank & Trust would have allowed financing of a building without a contract for deed. Ashton also testified that he believed any contract for deed would have been prepared with the assistance of First National Bank & Trust and that such a document would now be in their possession. No such document was produced at the trial. First National Bank & Trust and the

Roths, in response to written requests for admissions, conceded that no contract for deed or other written instrument existed on or prior to May 4, 1983.

2. This section provides in relevant part:

"Every conveyance of real estate not recorded shall be void as against ... any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance...."

3. This section defines conveyance as an "instrument in writing...."

tive notice to all of whatever claim the possessor asserts, whether legal or equitable." 8 Thompson on Real Property, § 4332, pp. 489–490.

"... a judgment lien is subject to every possible description of equity in favor of a third person against the debtor at the time the judgment lien attached, 'and it is immaterial whether the rights of such third party consist of an equitable estate or interest in the judgment debtor's land, an equitable lien on his land, or a mere equity against the debtor which attaches to or affects his land.' Even if the vendee has no deed, but has purchased only by parol contract, and has been put in possession, so that he has a valid equitable title, the land is not subject to judgments recovered against his vendor after the sale, and possession taken in pursuance thereof." 8A Thompson on Real Property, § 4425, pp. 216–217.

■ The general rule is that contracts for the sale of real property and transfers of real property interests must be made by an instrument in writing. Section 9–06–04, N.D.C.C.; Section 47–10–01, N.D.C.C. However, part performance of an oral contract which is consistent only with the existence of the alleged contract removes it from the statute of frauds. *Poyzer v. Amenia Seed & Grain Co.*, 409 N.W.2d 107 (N.D.1987). While partial payment of the purchase price alone is not justification for enforcing an oral contract to convey land, partial payment together with other acts such as possession or the making of valuable improvements may be sufficient to take a contract out of the statute of frauds. *See Parceluk v. Knudtson*, 139 N.W.2d 864 (N.D.1966). When improvements to the property are relied upon as part performance of an oral contract for purposes of removing it from the statute of frauds, the improvements made on the land must be valuable, substantial, and permanent. *Vasichek v. Thorsen*, 271 N.W.2d 555 (N.D.1978). Thus, part payment of the purchase price and substantial improvements to the property may remove an oral contract from the statute of frauds and create an enforceable contract constituting an enforceable equitable property interest.

■ A judgment creditor with actual notice that a party is in possession of the property upon which the judgment lien attaches must make reasonable inquiry of the possessor's interest in the property. If a possessor has an enforceable interest in the property under an oral contract of purchase, the judgment creditor takes subject to that interest. *See Bump v. Dahl*, 26 Wis.2d 607, 133 N.W.2d 295 (1965); *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802 (1963); *Laughton v. McDonald*, 61 Cal. App. 678, 215 P. 707 (D.C.App.1923). *See also Pennsylvania Mutual Life Insurance Co. v. Kimble*, 132 Neb. 408, 272 N.W. 231 (1937); *Dengler v. Fowler*, 94 Neb. 621, 143 N.W. 944 (1913); *Foster Lumber Company v. Harlan County Bank*, 71 Kan. 158, 80 P. 49 (1905).

In *Bump v. Dahl, supra,* Haley entered an oral agreement to exchange a triangular parcel of property with Bump for another parcel. Bump took possession of the triangular parcel and made improvements on it sufficient to constitute part performance of the oral agreement, thereby taking it out of the statute of frauds and making the agreement to exchange parcels enforceable against Haley. Haley then sold his property to the Dahls. The Wisconsin Supreme Court reached the following conclusions:

"There is no dispute Bump was in possession of the disputed triangle which had been landscaped, used, and incorporated into lot 38 as a part thereof and visibly was no part of the property the Dahls were purchasing. It is well established, possession of land is constructive notice and is sufficient to put the purchaser on his guard of whatever rights the possessor may have in the land if such possession is visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with, or adverse to the title or interest of the vendor.... Such possession is considered constructive notice of the rights of the possessor, whether the possession is used for the purpose of charging a purchaser with notice of an outstanding equity or of an unrecorded conveyance and thereby defeating any claim under sec. 235.49, Stats." [Cita-

tions omitted.] *Bump v. Dahl*, 133 N.W.2d at 298.

The Wisconsin court held that the Dahls bought the property subject to Bump and Haley's oral agreement to exchange parcels and, therefore, were required to convey the triangular parcel to Bump "in the same manner and extent" as Haley had agreed to do.

*Boesiger, supra,* involved a purchase of real estate under an oral contract. The Idaho Supreme Court held that where the buyer had detrimentally relied on the seller's oral promise to sell him the property, the seller was equitably estopped to deny the buyer's right to purchase the property under the oral contract. The court further held that subsequent purchasers, who had been advised of the possessor's purchase rights under the oral contract, were not *bona fide* purchasers and were subject to the possessor's interest in the property.

■ In accord with the foregoing authorities, we conclude that a possessor's legal or equitable property interest is superior to the interest of a subsequent purchaser or judgment creditor who has notice, actual or constructive, of the possessor's interest in the property.

■ On remand, the trial court made specific findings that prior to May 4, 1983, the Roths had constructed and were operating a business out of a 20,000 square foot building on the property and had paid approximately $25,000 toward the purchase price of the property. The trial court also found that Williston Cooperative knew that the Roths were occupying the property and "should have known on inquiry of the claims of other people on the property." These findings are supported by the evidence and are not clearly erroneous. Rule 52(a), N.D.R.Civ.P. While the trial court's written findings could have been more specific, they adequately reflect the trial court's conclusion that a prudent inquiry by Williston Cooperative would have disclosed that the Roths had partially performed their oral agreement to purchase the property, and, therefore, had an enforceable equitable ownership interest in the property. Consequently, Williston Co-operative's judgment lien is subject to the Roths' interest in the property.

The judgment is affirmed.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.